CRANE HOLLOW, INC. et al., Appellants,

v.

MARATHON ASHLAND PIPE LINE, LLC et al., Appellees.

[Cite as *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC* (2000), 138 Ohio App.3d 57.]

Court of Appeals of Ohio,
Fourth District, Hocking County.

Nos. 99CA16, 99CA17 and 99CA18.

Decided June 6, 2000.

*Mark R. Riegel* and *D. Joe Griffith*, for appellants.

*John P. Lavelle*, for appellees.

*Nan M. Still*, for *amicus curiae* in favor of appellants.

---

KLINE, Presiding Judge.

Crane Hollow, Inc., the Metropolitan Park District of Columbus ("Metro Parks"), and a group of Hocking County landowners appeal the Hocking County Court of Common Pleas' decision and judgment entry in favor of Marathon Ashland Pipe Line, LLC and Ohio River Pipe Line, LLC (collectively "Marathon"). Crane Hollow, Metro Parks and the other landowners assert that the trial court's judgment regarding the width of the Marathon's easement is against the manifest weight of the evidence and that its finding that the easement was not abandoned is against the manifest weight of the evidence. We disagree, because the record contains some competent, credible evidence supporting these findings. Crane Hollow, Metro Parks and the other landowners also assert that

the trial court abused its discretion by expanding the width of the easement in some areas. We disagree, because the trial court acted pursuant to its equitable jurisdiction and did not act arbitrarily, unreasonably, or unconscionably. Finally, Crane Hollow, Metro Parks, and the landowners assert that the trial court erred in determining that the Cooperative Agreement between Marathon and Metro Parks did not apply to the easement. We disagree, because the contract is ambiguous as a matter of law and because the trial court's factual determination that the parties did not intend to include the easement in the Cooperative Agreement is supported by some competent, credible evidence.

Accordingly, we overrule each of Crane Hollow, Metro Parks, and the other landowners' assignments of error and we affirm the judgment of the trial court.

## I

Marathon recently acquired an existing easement, originally granted to the Ohio Fuel Supply Company, that crosses the properties of Crane Hollow, Metro Parks, Big Brothers/Big Sisters Association of Greater Columbus, Michael Daniels, Kirk and Debra Pierce, Larry Menchhofer, Barbara Holt, Julie Guda, Dennis Savage, Barbara Andreas, and Thomas and Teresa Amerine (collectively, "the landowners"). The grant provides the easement owner with "the right to lay a pipeline, and maintain, operate, repair, replace, and remove the same * * * [and] change the size of its pipes * * *." The grant requires the easement owner to pay for any damages to crops or fences arising from its exercise of this right. The grant further provides the easement owner with "the right at any time to lay, maintain, operate, repair, replace and remove a second line of pipe along side of the first line, upon the payment of a like consideration, and subject to the same conditions * * *." The granting document does not describe the easement's width. The Ohio Fuel Supply Company acquired the easement in approximately 1916 and installed the buried pipeline known as the FR–25.

The FR–25 was used for the transportation of natural gas from 1916 until 1986, when its owner and Marathon's direct predecessor in interest, Columbia Gas Transmission Corporation, capped off portions of the FR–25 due to deterioration. When Marathon acquired the FR–25 easement from Columbia, it notified the landowners of its intent to replace the FR–25 with a modern pipeline capable of carrying liquid petroleum. Marathon further notified the landowners that it would remove all trees within seventy-five feet of the FR–25 in order to replace it, and that it would maintain a fifty-foot clearing for maintenance purposes.

The ensuing dispute prompted the parties to file three separate lawsuits in the trial court, each seeking injunctions or declaratory relief. The trial court consolidated the three actions and conducted a bench trial.

At trial, the landowners presented evidence of numerous large trees growing within seventy-five feet of the FR–25. They also presented evidence that portions of the FR–25 had not been used since 1986, and that it had rust holes in it. Additionally, they presented evidence that Columbia executed an agreement with Metro Parks (the "Cooperative Agreement") that altered and limited the rights associated with the FR–25 on a few properties.

Marathon submitted historical evidence that large trees were used as forms for putting fire bends in pipes and as leverage anchors for moving heavy sections of pipe when the FR–25 was constructed. Large groups of men assisted by teams of oxen and horses constructed the FR–25. The construction process required a great deal of space to accommodate the men, animals, materials, and equipment.

Austin Cramer, a former Columbia employee who was in charge of maintaining the northern portion of the FR–25 from 1979 through 1995, testified that he cleared small trees and brush in a fifty-foot-wide strip surrounding the FR–25 on a regular basis. Cramer stated that he left large trees in place to avoid damaging the FR–25. Marathon submitted Cramer's detailed daily logbooks in which he recorded his clearing activities. Cramer also testified about his co-worker's clearing activities that occurred on the southern portion of the FR–25.

Finally, Marathon presented evidence that the Cooperative Agreement applied only to pipelines that are part of the Crawford Storage Field and that the FR–25, while in the vicinity of the Crawford Storage Field, is not part of the Crawford Storage Field.

The trial court found that Marathon established, based upon its predecessor's use and the landowners' acquiescence, that the easement is fifty feet wide. The trial court further found that the width of the construction easement was established at seventy-five feet based upon use and acquiescence. The trial court also found that Columbia did not abandon the easement when it took the FR–25 out of service. Finally, the trial court found that the Cooperative Agreement did not apply to the FR–25 pipeline.

The landowners appeal, asserting the following assignments of error:

"I. The trial court's decision that the width of the FR–25 easement was 50 feet based upon use and that the line was originally constructed in 1916 using 75 feet was against the manifest weight of the evidence.

"II. The trial court abused its discretion by expanding the width of the easement established by historical use and acquiescence.

"III. The trial court's decision that the FR–25 easement was not abandoned on the property of appellants Daniels, Pierce and Metro Parks was against the manifest weight of the evidence.

"IV. It was plain error for the trial court to conclude that the Cooperative Agreement between Columbus and Franklin County Metropolitan Park District and Columbia Gas did not prohibit or restrict the proposed replacement of the FR–25 line with Clear Creek Metro Park and that the Cooperative Agreement had been surrendered."

## II

In their first assignment of error, the landowners assert that the trial court's determinations that Marathon's predecessors (1) maintained the easement at a width of fifty feet and (2) used an area seventy-five feet in width to construct the FR–25 were against the manifest weight of the evidence.

A reviewing court will not reverse a judgment as being against the manifest weight of the evidence when the judgment is supported by some competent, credible evidence going to all the essential elements of the case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578, syllabus. When conducting its review, an appellate court must make every reasonable presumption in favor of the trial court's findings of fact. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614, 614 N.E.2d 742, 745; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 410–411, 461 N.E.2d 1273, 1276–1277.

An easement is an interest in the land of another, created by prescription or express or implied grant, that entitles the owner of the easement, the dominant estate, to a limited use of the land in which the interest exists, the servient estate. *Alban v. R.K. Co.* (1968), 15 Ohio St.2d 229, 231, 44 O.O.2d 198, 200, 239 N.E.2d 22, 23–24; *Yeager v. Tuning* (1908), 79 Ohio St. 121, 124, 86 N.E. 657, 658; *Wray v. Wymer* (1991), 77 Ohio App.3d 122, 130, 601 N.E.2d 503, 508. When an easement is created by an express grant, the extent and limitations upon the dominant estate's use of the land depend upon the language in the grant. *Alban* at 232, 44 O.O.2d at 200–201, 239 N.E.2d at 24; *Columbia Gas Transm. Corp. v. Bennett* (1990), 71 Ohio App.3d 307, 318, 594 N.E.2d 1, 7–8.

The grant of an easement includes the grant of all things necessary for the dominant estate to use and enjoy the easement. *Day, Williams & Co. v. RR. Co.* (1884), 41 Ohio St. 392, 1884 WL 137; *Roebuck v. Columbia Gas Transm. Corp.* (1977), 57 Ohio App.2d 217, 224, 11 O.O.3d 256, 259–260, 386 N.E.2d 1363, 1368; *Turner v. Nichols* (Nov. 20, 1998), Washington App. No. 97CA41, unreported, 1998 WL 833588. Thus, in determining the nature and extent of an easement, the court should construe the easement in a manner that permits the dominant estate to carry out its purpose. *Alban* at 233, 44 O.O.2d at 201, 239 N.E.2d at 24–25. "[P]ermission to lay pipes includes the right to enter and dig the land to

lay them." *Roebuck* at 224, 11 O.O.3d at 260, 386 N.E.2d at 1368. Where the dimensions of the easement are not expressed in the granting instrument, the court determines the dimensions from (1) the language of the grant, (2) the circumstances surrounding the transaction, and (3) that which is reasonably necessary and convenient to serve the purpose for which the easement was granted. *Thomas v. Columbus* (1987), 39 Ohio App.3d 53, 56, 528 N.E.2d 1274, 1277; *Rueckel v. Texas E. Transm. Corp.* (1981), 3 Ohio App.3d 153, 3 OBR 172, 444 N.E.2d 77; *Columbia Gas Transm. Corp. v. Adams* (1994), 68 Ohio Misc.2d 29, 33, 646 N.E.2d 923, 925–926. Therefore, when the intended dimensions of an easement are not expressed in the grant itself, determining the dimensions becomes largely a question of fact, and the trial court's finding will be upheld if it is not contrary to the manifest weight of the evidence. *Murray v. Lyon* (1994), 95 Ohio App.3d 215, 220, 642 N.E.2d 41, 44–45; *Sheldon v. Flinn* (1993), 89 Ohio App.3d 490, 494, 624 N.E.2d 1109, 1111–1112.

 An easement holder may not increase the burden upon the servient estate by engaging in a new and additional use of the easement. *Lakewood Homes, Inc. v. BP Oil, Inc.* (Aug. 26, 1999), Hancock App. No. 5–98–29, unreported, 1999 WL 693152, citing *Centel Cable Television Co. of Ohio, Inc. v. Cook* (1991), 58 Ohio St.3d 8, 12, 567 N.E.2d 1010, 1014–1015. However, in the absence of specific language to the contrary, the easement holder "is entitled to vary the mode of enjoyment and use of the easement by availing himself of modern inventions if by doing so he can more freely exercise the purpose for which the grant was made." *Ohio Oil Gathering Corp. II v. Shrimplin* (July 23, 1990), Coshocton App. No. 89–CA–20, unreported, 1990 WL 108737, citing 28 Corpus Juris Secundum, (1941) Easements, Section 95. See, also, 28A Corpus Juris Secundum (1996) 391, Easements, Section 173, citing *Hash v. Sofinowski* (1985), 337 Pa.Super. 451, 454–455, 487 A.2d 32, 34, and *Boydstun Beach Assn. v. Allen* (App.1986), 111 Idaho 370, 378, 723 P.2d 914, 922. Generally, the court should presume that the parties contemplated that normal development would result in some changes in the mode of use of the easement, even if it were unlikely that the parties anticipated the specific developmental changes. 28A Corpus Juris Secundum (1996) 371, Easements, Section 160; see, also, *Knox v. Pioneer Natural Gas Co.* (Tex.App.1959), 321 S.W.2d 596, 601, citing Restatement of the Law of Property, Sections 482 and 484.

 When the extent of the rights conveyed in an easement, such as the dimensions of the easement, are not apparent from the language of the grant, the dimensions may be established by use and acquiescence. *Munchmeyer v. Burfield* (Mar. 26, 1996), Washington App. No. 95CA7, unreported, 1996 WL 142579, citing Bruce & Ely, Law of Easements and Licenses in Land (1988), Sections 7.02(2)(b) and 7.06. Once so established, the easement holder is

estopped from asserting that different dimensions are reasonably necessary or convenient. *Id.* However, if the language of the grant clearly gives the easement holder a right in excess of the one actually used, such right still exists notwithstanding the easement holder's exercise of a lesser privilege. *E. Ohio Gas Co. v. James Bros. Coal Co.* (1948), 53 Ohio Law Abs. 438, 40 O.O. 440, 441–442, 85 N.E.2d 816, 818; *Panhandle E. Pipe Line Co. v. Tishner* (Ind.App.1998), 699 N.E.2d 731, 737, fn. 1; *Texas E. Transm. Corp. v. Grassi* (July 12, 1992), E.D.Pa. Nos. 89–4617 and 89–5515, unreported, 1992 WL 172594; *Knox* at 600.

Several Ohio courts have construed language similar to that contained in the FR–25 grant and determined that a width of fifty feet is reasonably necessary and convenient for the maintenance of a pipeline. *Columbia Gas Transm. Corp. v. Davis* (S.D.Ohio 1998), 33 F.Supp.2d 640; *Roebuck v. Columbia Gas Transm. Corp.* (1977), 57 Ohio App.2d 217, 224, 11 O.O.3d 256, 259–260, 386 N.E.2d 1363, 1368 *Columbia Gas Transm. Corp. v. Large* (1992), 63 Ohio Misc.2d 63, 65, 619 N.E.2d 1215, 1216; *Columbia Gas Transm. Corp. v. Adams* (1994), 68 Ohio Misc.2d 29, 34, 646 N.E.2d 923, 927–927. However, in pipeline easement cases where the owners of the servient estates prove that the pipeline owner acquiesced to mature trees growing within fifty feet of the pipeline, Ohio courts have held that (1) the pipeline easement was established by the tree growth, and (2) the easement owner was estopped from asserting that a wider easement was reasonably necessary or convenient. *Lakewood Homes, supra,* unreported; *Ashland Pipe Line Co. v. Lett* (Apr. 11, 1990), Ashland App. No. CA–942, unreported, 1990 WL 52505. This court has consistently held that the dimensions of an easement may be fixed by use and acquiescence. *Munchmeyer; Southers v. Rapp* (Mar. 4, 1998), Ross App. No. 97CA2296, unreported, 1998 WL 100409.

A

The landowners first assert that the trial court's determination that Marathon established a fifty-foot easement by use and acquiescence is against the manifest weight of the evidence because they presented unrebutted evidence that large trees that predate the easement are growing in the easement's path. Marathon presents the unique argument that tree growth does not establish acquiescence in this case because the presence of large, mature trees along the pipeline is consistent with technology existing when the FR–25 pipeline was installed in 1916.

At trial, Marathon submitted evidence that workers actually used the large trees along the easement to assist in installing the original FR–25 pipeline. Specifically, Marathon submitted historical evidence that large trees were used as forms for putting fire bends in pipes and as leverage anchors for moving heavy sections of pipe. Bends and wrinkles in the FR–25 prove that these methods

were used in its installation. Additionally, Marathon presented evidence that its predecessors maintained the FR–25 easement at fifty feet by bulldozing brush around the trees. A former Columbia maintenance employee testified that he intentionally did not cut down the large trees because doing so would have damaged the FR–25 pipeline. Thus, Marathon presented evidence that cutting down the trees actually would have been inconsistent with maintaining the pipeline.

While the record contains some unrebutted evidence of large trees growing on the easement, the record also contains some competent, credible evidence that the tree growth is not inconsistent with Marathon's use of the easement. The record shows that Marathon and its predecessors maintained the width of the easement by bulldozing brush, spraying herbicides, and leaving large trees standing. Therefore, we find that in this instance tree growth is related to Marathon's mode of use of the easement, not the width of the easement. Accordingly, we find that the record contains some competent, credible evidence that Marathon and its predecessors maintained the easement in question at a width of fifty feet.

## B

The landowners also contend that the trial court's judgment is against the manifest weight of the evidence because the record does not contain any competent, credible evidence that the original parties contemplated the pipeline industry's practice of aerially inspecting pipelines. The landowners assert that Marathon needs a fifty-foot easement solely for the purpose of making the pipeline visible for aerial inspection, a use clearly not contemplated by the parties in 1916. Thus, while acknowledging that the easement permits Marathon to maintain the pipeline, the landowners contend that Marathon cannot do so by expanding the easement's width to fifty feet and conducting aerial inspections.

Although Marathon and its predecessors did not remove trees from the easement in order to maintain it in the past, Marathon is entitled to vary the mode by which it uses the easement. See *Ohio Oil Gathering Corp., supra.* Aerial observation constitutes a modern invention that enables Marathon to more freely exercise its right to maintain the easement. We presume that the parties contemplated some normal developmental changes in the mode of use of the easement. See *Ohio Oil Gathering Corp., supra; Knox, supra.* Therefore, even if the parties did not specifically foresee the possibility that the easement owner would use aerial observation to maintain the pipeline, aerial observation is permissible under the terms of the easement because it constitutes a mode of accomplishing the easement's purpose, *i.e.,* maintaining the easement.

C

Finally, the landowners assert in their first assignment of error that the trial court's determination that the FR–25 was constructed using an area seventy-five feet wide was against the manifest weight of the evidence. Marathon asserts that some competent, credible evidence supports the trial court's finding regarding the width of the construction easement. Further, Marathon asserts that the trial court's finding regarding the width of the construction easement is immaterial, because the easement specifically permits it to replace the pipeline, the pipeline has never been replaced in the past, and therefore the width of the easement for replacement purposes has not been fixed by use and acquiescence.

A review of the record reveals that Marathon presented historical evidence of the methods available for constructing pipelines at the time the FR–25 was constructed. Curves and wrinkles in the FR–25 prove that the fire bends and brace and tackle type leverage anchors were used in its installation. These processes required large groups of men, teams of horses and oxen, and large trees. The evidence further reveals that these men and animals would have required a working and camping area approximately seventy-five feet wide.

We find that the foregoing constitutes some competent, credible evidence that the original construction easement for the FR–25 was approximately seventy-five feet wide. Competent, credible evidence also supports Marathon's contention that large trees in the easement area do not define the boundaries of the construction easement because those trees were used in furtherance of the construction of the FR–25. Therefore, we find that the trial court's determination that the construction easement was established at seventy-five feet by use and acquiescence is not against the manifest weight of the evidence.

Because some competent, credible evidence supports the trial court's judgment, we find that the trial court did not err in defining the width of the maintenance and construction easements. Accordingly, we overrule the landowners' first assignment of error.

III

In their second assignment of error, the landowners contend that the trial court abused its discretion by expanding the width of the easement after it was established by use and acquiescence. Specifically, the landowners direct our attention to the unrebutted photographic evidence depicting a narrow or non-existent clearing.

Marathon asserts that, although its predecessors failed to clear even young trees and brush in some areas, the record also contains some competent, credible evidence that Marathon's predecessors maintained a clearing more than seventy-

five feet wide in other areas. Therefore, Marathon concludes that the trial court had the authority to weigh the parties' competing interests and equitably divide their property rights according to that which is reasonably necessary and convenient to serve the purpose for which the easement was granted.

When a party invokes the trial court's equitable jurisdiction, the trial court possesses discretionary authority to weigh the parties' competing interests and exact an equitable division of their property rights. *Murray v. Lyon* (1994), 95 Ohio App.3d 215, 221, 642 N.E.2d 41, 45, citing *Ohio Power Co. v. Bauer* (1989), 60 Ohio App.3d 57, 59–60, 573 N.E.2d 780, 783–784. We will not reverse a determination rendered pursuant to the court's equity jurisdiction absent an abuse of discretion. A finding that a trial court abused its discretion implies that the court acted unreasonably, arbitrarily or unconscionably. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1141–1142. When applying the abuse-of-discretion standard, we may not substitute our judgment for that of the trial court. *Berk v. Matthews* (1990), 53 Ohio St.3d 161, 169, 559 N.E.2d 1301, 1308–1309.

A court of equity abuses its discretion when it alters an established easement or requires a party to accept an altered easement in substitution of the original. *Munchmeyer, supra; Hollosy v. Gershkowitz* (1950), 88 Ohio App. 198, 201, 44 O.O. 221, 222–223, 98 N.E.2d 314, 315–316. However, the determination of whether the intended dimensions have been established is largely a question of fact, and the trial court's finding will be upheld if supported by some competent, credible evidence. *Munchmeyer, supra; Southers, supra.*

In this case, the landowners and Marathon invoked the trial court's equitable jurisdiction by seeking injunctions against each other. The record contains some competent, credible evidence that Marathon and its predecessors generally maintained the easement at a width of fifty feet but that the maintained width varied between zero and seventy-five feet in some locations. Thus, the trial court's determination that the easement's width was not established in some locations was not against the manifest weight of the evidence. Consequently, the trial court possessed the discretionary authority to equitably divide the property rights by defining a consistent width for the easement.

The trial court based its equitable determination upon what is reasonably necessary and convenient to maintain the utility of the easement. We cannot say that the trial court's determination that fifty feet is an equitable width is arbitrary, unreasonable, or unconscionable. Therefore, the trial court did not abuse its discretion in defining the width of the easement as fifty feet in those areas where the width had not been established by use and acquiescence.

Accordingly, we overrule the landowners' second assignment of error.

## IV

In their third assignment of error, the landowners assert that the trial court's determination that Marathon and its predecessors had not abandoned a portion of the easement is against the manifest weight of the evidence. Marathon contends that the landowners failed to establish that its predecessors intended to abandon the easement.

 To demonstrate that a dominant estate has abandoned its easement, the servient estate must establish both (1) nonuse of the easement and (2) an intent to abandon the easement. *Snyder v. Monroe Twp. Trustees* (1996), 110 Ohio App.3d 443, 457, 674 N.E.2d 741, 750–751; *Scott v. Columbia Gas* (Apr. 5, 2000), Lorain App. No. 98CA007241, unreported, 2000 WL 354132; *McCarley v. O.O. McIntyre Park Dist.* (Feb. 11, 2000), Gallia App. No. 99CA7, unreported, 2000 WL 203997. Evidence of an easement holder's mere nonuse of an easement is insufficient to establish abandonment. *Snyder* at 457, 674 N.E.2d at 750; *Langhorst v. Riethmiller* (1977), 52 Ohio App.2d 137, 140–141, 6 O.O.3d 101, 102–104, 368 N.E.2d 328, 330–331. Intent to abandon an easement must be "demonstrated by 'unequivocal and decisive acts' inconsistent with continued use and enjoyment of the easement." *Snyder* at 458, 674 N.E.2d at 750, citing *Warner v. Thompson* (Sept. 27, 1993), Fayette App. No. CA93–02–002, unreported, 1993 WL 386252, citing *Schenck v. Cleveland, Cincinnati, Chicago & St. Louis Ry. Co.* (1919), 11 Ohio App. 164, 167, 1919 WL 890. The determination of whether an easement has been abandoned is a question of fact. *McCarley, supra.* Therefore, we will not reverse the judgment of the trial court if it is supported by some competent, credible evidence. *C.E. Morris Co., supra,* at syllabus.

 The landowners presented evidence that Marathon's immediate predecessor in interest, Columbia, capped off a portion of the FR–25 in 1986 and transferred its natural gas customers from the FR–25 to another natural gas line. Additionally, the landowners presented evidence that after Columbia capped the line, it allowed it to deteriorate and rust. The landowners also produced a 1989 letter from a Columbia manager to the Metro Parks director, which states that Columbia has four pipelines that cross Metro Parks land: the E, the R–453, the SR–545, and the SR–580. In a similar letter written seven years earlier, before Columbia capped the FR–25, Columbia lists the FR–25 among its pipelines. Finally, a Marathon employee testified that he had heard of the FR–25 and was told that it was an abandoned line.

Austin Cramer, a Columbia employee, maintained the northern portion of the FR–25 from 1979 until his retirement in November 1995. Cramer testified that he made an effort to keep the FR–25 easement clear to a width of fifty feet even after he capped the line and diverted the customers to a newer, safer line.

However, Cramer admitted that he did a better job maintaining the easement before he capped it. Cramer testified that he tried to keep the easement as clear as possible because he was told that Columbia planned to reopen or replace the FR–25. Marathon submitted Cramer's daily logbooks to support his testimony. Finally, Marathon showed that Columbia assigned the FR–25 easement to Marathon, thus evidencing Columbia's belief that it still possessed the easement and had not abandoned it.

We find that Cramer's testimony, combined with Columbia's assignment of the easement, constitutes some competent, credible evidence that Columbia did not intend to abandon the easement. Further, we find that the evidence that the landowners produced clearly demonstrates that Columbia stopped using a portion of the FR–25, but does not demonstrate that Columbia took unequivocal and decisive acts inconsistent with the continued use of the easement. Therefore, we find that the trial court's determination that Columbia did not abandon the easement is not against the manifest weight of the evidence.

Accordingly, we overrule the landowners' third assignment of error.

## V

In their final assignment of error, the landowners assert that the trial court committed plain error when it concluded that the Cooperative Agreement between Metro Parks and Columbia does not apply to the FR–25 pipeline and that Columbia surrendered the Cooperative Agreement with respect to the FR–25. Marathon contends that the trial court correctly determined that the Cooperative Agreement applies only to Crawford Storage wells, pipelines, and roadways.

A court must interpret a contract so as to carry out the intent of the parties. *Foster Wheeler Enviresponse, Inc. v. Franklin Cty. Convention Facilities Auth.* (1997), 78 Ohio St.3d 353, 678 N.E.2d 519; *Skivolocki v. E. Ohio Gas Co.* (1974), 38 Ohio St.2d 244, 67 O.O.2d 321, 313 N.E.2d 374, paragraph one of the syllabus. "The intent of the parties to a contract is presumed to reside in the language they chose to employ in the agreement." *Shifrin v. Forest City Ent., Inc.* (1992), 64 Ohio St.3d 635, 597 N.E.2d 499; *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 31 OBR 289, 509 N.E.2d 411, paragraph one of the syllabus. Thus, a court must construe a contract against its drafter. *Cent. Realty Co. v. Clutter* (1980), 62 Ohio St.2d 411, 16 O.O.3d 441, 406 N.E.2d 515.

If the contract's terms are unambiguous, a court may not interpret the contract in a manner inconsistent with those terms. *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 246, 7 O.O.3d 403, 406, 374 N.E.2d 146, 150. Contractual terms are ambiguous if the meaning of the terms cannot be deciphered from reading the entire contract or if the terms are reasonably

susceptible of more than one interpretation. *U.S. Fid. & Guar. v. St. Elizabeth Med. Ctr.* (1998), 129 Ohio App.3d 45, 55, 716 N.E.2d 1201, 1207–1208. When the court finds an ambiguity in a contract, the court may look to extrinsic evidence to determine the parties' intent. *U.S. Fid. & Guar.* at 55–56, 716 N.E.2d at 1207–1209. "Such extrinsic evidence may include (1) the circumstances surrounding the parties at the time the contract was made, (2) the objectives the parties intended to accomplish by entering into the contract, and (3) any acts by the parties that demonstrate the construction they gave to their agreement." *Id.* at 56, 716 N.E.2d at 1208, citing *Blosser v. Carter* (1990), 67 Ohio App.3d 215, 219, 586 N.E.2d 253; see, also, 4 Williston on Contracts (3 Ed.1961) 716–717, Section 618.

If a contract is clear and unambiguous, then its interpretation is a matter of law that we review *de novo*. *Nationwide Mut. Fire. Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684, 685–686. However, if the contract is ambiguous, ascertaining the parties' intent constitutes a question of fact. See *Money Station, Inc. v. Electronic Payment Serv., Inc.* (1999), 136 Ohio App.3d 65. We will not reverse a factual finding of the trial court as long as some competent, credible evidence supports it. *C.E. Morris Co., supra,* at syllabus.

In this case, the Cooperative Agreement is susceptible of two reasonable interpretations on its face. In some places the agreement purports to apply to those pipelines that are part of the Crawford Storage Field and to be "subject to" existing easements and pipelines located in the Crawford Storage Field area. In other places, the agreement refers to "all pipelines" depicted on the map. The map depicts Crawford Storage Field pipelines (those connected to storage wells) with a thick black line. Non–Crawford Storage Field pipelines are illustrated with a medium black line, and thin black lines show property boundaries. The map's legend does not reflect any distinction based upon the width of the black lines. Rather, it simply labels all black lines as completed Crawford Storage Field pipelines. The Cooperative Agreement could be reasonably interpreted to refer to either (1) all pipelines that were a part of the Crawford Storage Field or (2) all pipelines in the area of the Crawford Storage Field. We find that the trial court did not err in concluding that the Cooperative Agreement is ambiguous on its face.

The record in this case reveals that when the Cooperative Agreement was executed, the FR–25 was an active field-gathering line that crossed a portion of the Crawford Storage Field area. The FR–25 was not used for storage or linked to any storage well. Ralph Edwards, who executed the Cooperative Agreement in his capacity as Columbia's vice president of storage, possessed authority over storage pipelines but not over field-gathering pipelines, such as the FR–25.

Columbia's objective in entering into the Cooperative Agreement, as stated in the first paragraph of the Cooperative Agreement, was to facilitate the development of the Crawford Storage Field. We find these facts and circumstances constitute some competent, credible evidence that the parties intended that the Cooperative Agreement apply only to those pipelines that were part of the Crawford Storage Field. Therefore, the trial court did not err in finding that the Cooperative Agreement is inapplicable to the FR–25 easement. Because the Cooperative Agreement is inapplicable to the FR–25, we need not examine whether Columbia possessed the power to surrender the agreement with respect to the FR–25.

Accordingly, we overrule the landowners' final assignment of error.

## VI

In conclusion, we find that the record contains some competent, credible evidence supporting each of the trial court's challenged findings. Additionally, we find that the trial court did not abuse its discretion in determining the width of the easement. We overrule each of the landowners' assignments of error.

Accordingly, we affirm the judgment of the trial court.

*Judgment affirmed.*

Peter B. Abele, J., concurs.

Grey, J., concurs and concurs separately.

Lawrence Grey, J., retired, of the Fourth Appellate District, sitting by assignment.

Lawrence Grey, Judge, concurring with concurring opinion.

I concur in the judgment and opinion. I would, however, add a comment on the nature and extent of the easement in question here because it exemplifies our changing attitude toward the world we live in.

When these easements were granted almost a hundred years ago, the idea of progress was dominant. The common ecological concept was the balance of nature, *i.e.*, that nature was self healing and that whatever was done, the land would eventually restore itself. The language of the easements reflects this attitude in the way the grantee is given a very broad range of permissible activity. The fact that the easement does not even include a specified width demonstrates the laissez faire attitude toward the land.

Today, of course, no one would grant an easement as broad as the one at issue here. The courts and the parties, however, are bound to follow the terms of the

easement as originally granted and to construe it as the original parties intended. The current landowners took their property subject to what the prior landowners in 1916 would have deemed acceptable. Even though what the current landowners regard as acceptable is much more restrictive, they can no more rewrite history than this court can rewrite the terms of the easement.