OPINION
{¶ 1} Defendant-appellant, Sally A. Mills, appeals a declaratory judgment from the Butler County Court of Common Pleas extinguishing an easement due to abandonment in favor of plaintiff-appellee, Harvest Land Co-op, Inc. We reverse and remand the decision of the trial court.
 {¶ 2} On October 17, 2003, appellant purchased the real property located at 374 *Page 2 
South "D" Street in the city of Hamilton. Harvest Land owned real property situated behind a number of plots, including appellant's. Harvest Land's property fronted "C" Street, a road running parallel to "D" street. A significant slope extended from appellant's property to Harvest Land's property. This slope was terraced and contained steps.
 {¶ 3} While preparing to sell its property in 2003, Harvest Land discovered that the property was burdened by an easement found in the record chain of title. This rectangular-shaped easement was located directly behind appellant's property, and was accessible by way of a public alley connecting to "C" street. The 12-foot wide strip of land comprising the public alley was deeded to the city of Hamilton by Harvest Land's predecessor in interest, the Martin Mason Brewing Company.[1] Following demolition of the brewery building, Harvest Land leveled the area and planted grass over the alleyway.
 {¶ 4} The alleyway and easement in question provided the sole means of vehicular ingress and egress to the rear of appellant's property. An unspecified number of appellant's predecessors in interest utilized the alley to access a detached garage housed at the back of appellant's property. However, these former owners failed to maintain the garage, which lay in ruins when appellant purchased the residence. Furthermore, an overgrowth of trees and brush had developed in the easement itself. In an affidavit accompanying her memorandum in opposition to summary judgment, appellant averred that she intended at the time of purchase to fully restore the historical appearance of the property and to rebuild the garage.
 {¶ 5} In an attempt to declare the easement abandoned, Harvest Land brought a quiet title action against appellant and adjoining property owners. Harvest Land *Page 3 
moved for summary judgment, which was granted by the lower court. Appellant appealed. In Harvest Land Co-op, Inc. v. Sandlin, Butler App. No. CA2005-08-360, 2006-Ohio-4207, this court reversed, finding that a genuine issue of material exists regarding abandonment of the *Page 4 
easement on appellant's property. On remand, a trial was held by the lower court. Via written decision entering judgment in favor of Harvest Land, the court held that the easement had been abandoned by appellant's predecessors in interest. Appellant timely appeals, raising a single assignment of error:
 {¶ 6} "THE TRIAL COURT ERRED AS A MATTER OF LAW BY DECLARING MILLS' EASEMENT ABANDONED WITHOUT REQUISITE EVIDENCE OF INTENT TO ABANDON."
 {¶ 7} In her assignment of error, appellant disputes the lower court's decision, arguing that the record is devoid of any evidence that her predecessors in interest intended to abandon the easement.
 {¶ 8} When reviewing a trial court's decision concerning the law of easements, an appellate court will not reverse the judgment as being against the manifest weight of the evidence if the judgment of the trial court is based on some competent, credible evidence going to all essential elements of the case. 125 Properties v. Regency Centers, Clermont App. No. CA2005-08-076, 2006-Ohio-1438. Because the trial court is best able to view the witnesses, observe their demeanor, gestures, and voice inflections, and use those observations in weighing the credibility of the witnesses, a reviewing court will presume that the trial court's findings of fact are accurate. Seasons Coal Co., Inc. v.City of Cleveland (1984), 10 Ohio St.3d 77.
 {¶ 9} An easement is defined as "a right, without profit, created by grant or prescription, which the owner of one estate, called the dominant estate, may exercise in or over the estate of another, called the servient estate, for the benefit of the former." Proffitt v.Plymesser (June 25, 2001), Brown App. No. CA2000-04-008, at 2-3, citingTrattar v. Rausch (1950), 154 Ohio St. 286, paragraph one of the syllabus. The owner of the servient tenement may use his property in any way that is not inconsistent with *Page 5 
the limited use allocated to the owner of the dominant tenement.Colburn v. Maynard (1996), 111 Ohio App.3d 246, 253.
 {¶ 10} An easement may be acquired by express grant, by implication, or by prescription.[2] Trattar at 291. Termination of an express easement not limited in duration may be accomplished in a number of ways: "The duration of an easement may be fixed by the terms of the instrument creating it; it may be of a permanent or perpetual duration and continue in operation forever or until terminated by acts of the parties or by operation of the law. It may also be terminated by the completion of the purpose or necessity for which the easement was created, or a change in the character or use of the property."Siferd v. Stambor (1966), 5 Ohio App.2d 79, 87.
 {¶ 11} The determination of whether an easement has been abandoned is a question of fact. Crane Hollow, Inc. v. Marathon Ashland Pipe Line,LLC (2000), 138 Ohio App.3d 57, 72. Abandonment need only be demonstrated by a preponderance of the evidence. Duggan v. Village ofPut-In-Bay (May 4, 2001), Ottawa App. No. OT-00-044, 2001 WL 477168 at *2. Therefore, we will not reverse the judgment of the trial court if it is supported by some competent, credible evidence. Id.
 {¶ 12} In order to demonstrate that a dominant estate has abandoned its easement, the servient estate must establish both nonuse of the easement and an intent to abandon the easement. Crane at 72, citingSnyder v. Monroe Twp. Trustees (1996), 110 Ohio App.3d 443, 457.
 Scope of the Case {¶ 13} As a preliminary matter, we must clarify the scope of the case. In our previous decision of the case at bar ("Sandlin I"), this court stated, "[a] comparison of *Page 6 
the evidence offered by both parties [during the summary judgment proceeding] reveals a dispute pertaining to the maintenance of the easement. This is an important issue. If the easement was in fact so overgrown that it became obstructed, this could indicate an intent to abandon the easement by appellant's predecessors in interest. If the easement was kept relatively clear, this could negate an intent to abandon." Sandlin I at ¶ 30. Additionally, this court stated "the deteriorated condition of the garage could evidence an intent to abandon the easement on the part of the previous owners." Id. at ¶ 33.
 {¶ 14} Harvest Land claims these statements limited the scope of the case upon remand to the trial court and, as a result, the trial court was not conducting a de novo trial. Rather, Harvest Land urges that the only issues for review at the trial level were the extent of the overgrowth on the easement and the amount of deterioration to the garage. Harvest Land argues that, to prove abandonment, it simply had to show either that the easement was overgrown or that the garage had deteriorated and was in a state of disrepair.
 {¶ 15} We disagree. In Sandlin I, this court determined that "[o]n remand, the fact finder will have occasion to consider evidence on both of the elements of abandonment." Clearly, on remand the trial court was instructed to hold a trial considering abandonment in its entirety, not simply a limited consideration of two narrow issues. Nor did this court's decision confine the trial court to consider only the cases or issues specifically addressed in Sandlin I. Rather, in Sandlin I this court identified areas where a genuine issue of material fact clearly existed when Harvest Land filed for summary judgment.[3] Accordingly, like the trial court, our review in the instant appeal considers the law of abandonment in its entirety in light of the evidence. *Page 7 
 Manifest Weight {¶ 16} As noted, abandonment of an easement is proved by showing both nonuse and an intent to abandon. Nonuse is undisputed in this case. Both parties acknowledge that the easement went unused and fell into disrepair for a significant period of time. As a result, the only issue for review is the intent to abandon.
 {¶ 17} Mere nonuse by an easement holder is insufficient to establish abandonment. Crane at 72, citing Langhorst v. Reithmiller (1977),52 Ohio App.2d 137, 140-141. "There must be a relinquishment of possession with an intent to terminate the easement." Wyatt v. Ohio Dept. ofTransp. (1993), 87 Ohio App.3d 1, 5. Intent to abandon an easement must be demonstrated by "unequivocal and decisive acts inconsistent with continued use and enjoyment of the easement." Crane at 72;Snyder at 458; Schenck v. Cleveland, Cincinnati, Chicago St. Louis Ry.Co. (1919), 11 Ohio App. 164, 167. There are an "innumerable variety of acts" which can prove the intent to abandon. Lonestar Steakhouse Saloon of Ohio, Inc. v. Ryska, Lake App. No. 2003-L-192, 2005-Ohio-3398, ¶ 56.
 {¶ 18} In its decision, the trial court found that "former owners failed to maintain the garage, which lay in ruins when defendant purchased the residence. Several large trees (or their remains) were found in the garage. The garage was found to be in a dilapidated condition as the roof had fallen in and only what appeared to be the foundation walls, remained. * * * The facts in the present case demonstrate that Mills' predecessors in interest intended to abandon the easement. Owners of the property prior to Mills failed to maintain the easement by cutting down trees or clearing brush. Rather, Mills' predecessors in title allowed trees, brush, and grass to grow so thick within the easement that access to the garage is impractical. Indeed the former alley leading to the easement, and the easement itself, were covered with dirt and sown with grass *Page 8 
many years ago. The condition of both the easement and the garage is sufficient evidence of an intent to no longer utilize the easement for purposes of ingress and egress to the garage or the rear of 374 South `D' Street. The dilapidation of the deeded alleyway and the growth of the trees in the easement all show an intent to abandon the easement. Although Mr. Hilsmier testified that he spoke to a governmental body about his intent to use the easement, neither he nor his wife ever did anything to affirmatively demonstrate a desire to use the easement. They allowed trees to grow and did nothing to improve the property."
 {¶ 19} Appellant contends that the evidence relied upon by the trial court is merely evidence of passive nonuse, not an intent to abandon. Appellant relies upon the demanding standard placed upon a servient estate holder to demonstrate an intent to abandon and claims that no evidence of intent is included in the record. In opposition, Harvest Land simply refers to this court's statements in Sandlin I and claims that the extent of disrepair demonstrates an "unequivocal and decisive" act of intent to abandon the easement.
 {¶ 20} In support if its case, Harvest Land offered the testimony of Douglas Vizedom, an employee of Harvest Land dating back to 1968. Vizedom testified that, based on his recollection, the easement had always been overgrown with trees and brush and he was unaware there was even a garage on appellant's land. Vizedom testified that he never observed the easement used for ingress or egress while he was present at the "C" Street site. Harvest Land also offered the testimony of Todd Turner, a registered land surveyor. Like Vizedom, Turner's testimony primarily addressed the amount of overgrowth around the easement, stating that large trees grew on and around the easement with a diameters up to 15 to 20 inches.
 {¶ 21} The trial court in this case placed significant weight on the overgrowth and *Page 9 
density of the trees and brush in and around the easement;[4]
ultimately finding that the purpose of the easement was impractical. Further, the court found that the disrepair was evidence of an intent to abandon and that the predecessors in interest did nothing and made no affirmative acts, showing a desire to use the easement or make any improvements to the easement.
 {¶ 22} An easement founded upon an express grant can is never abandoned by nonuse; no matter how long the nonuse continues. 36 Ohio Jurisprudence 2d (2002) 477, Easements and Licenses, Section 76. Nor is the owner of the dominant estate required to actually use the easement or make improvements upon the easement in order to retain title. Id., citing Langhorst. Moreover, jurisdictions throughout the United States consistently hold that allowing trees and brush to grow upon an easement is not dispositive of an intent to abandon. Spencer v. Kosir (2007), 301 Wis.2d 521, 528; Phillips v. Greg (Me. 1993), 628 A.2d 151, 153;Thompson v. Maryland Pennsylvania R.R. Preservation Soc. (1992),417 Pa.Super 216, 231.
 {¶ 23} After a review of the record, the trial court's decision is not supported by competent, credible evidence of an intent to abandon. The evidence proffered by Harvest Land primarily demonstrates neglect and disrepair, neither of which constitute an intent to abandon. The trial court's findings are merely examples of passive nonuse and include no "unequivocal or decisive act" of intent to abandon by appellant's *Page 10 
predecessors in interest.
 {¶ 24} The trial court found that appellant's immediate predecessor in interest did nothing to "affirmatively demonstrate a desire to use the easement." However, the owner of an express easement is not required to actually use an easement or "demonstrate a desire to use the easement" in order to retain his or her right to title. Nor is an easement holder required to make improvements to an easement. Further, the density of the woods, trees and brush emphasized by the trial court are not dispositive of an intent to abandon.
 {¶ 25} Further, nothing was affirmatively done to prevent the purpose or deny use of the easement. The trial court cites Reed v. Reed (June 4, 1986), Wayne App. No. 2128, 1986 WL 6351. In Reed, the Ninth District Court of Appeals found an intent to abandon an easement to be used for the purpose of a driveway where the owner of an easement constructed steps to his house on the easement. Id. at *1.
 {¶ 26} In Reed, the easement owner took decisive and unequivocal action to extinguish the purpose of the easement by building steps in the easement which was expressly granted for use as a driveway. No evidence of a similar affirmative act exists in the record of this case.
 {¶ 27} In contrast, in Crane Hollow v. Marathon Ashland Pipe Line,LLC, Marathon acquired an easement originally granted to the Ohio Fuel Supply Company that crossed the property of Crane Hollow in order to lay and maintain a pipeline to transport natural gas. 138 Ohio App.3d at 64. Ohio Fuel Supply used the pipeline from 1916 until 1986, when portions of the line were capped off due to deterioration. Id. When Marathon acquired the easement, it notified the landowners of its intent to replace *Page 11 
the line. Id. Marathon also notified the landowners that it intended to remove all trees within 75 feet of the pipeline and maintain a 50-foot clearing for maintenance purposes. Id. The court held that there was no intent to abandon despite evidence of numerous large trees growing within 75 feet of the pipeline, the pipeline had not been used since 1986, and rust holes had developed on the pipeline. Id. at 65. The court found that the evidence clearly shows that the fuel supply company stopped using the pipeline, but "does not demonstrate that [the company] took unequivocal and decisive acts inconsistent with the continued use of the easement." Id. at 73.
 {¶ 28} Further, in Erie Metroparks Bd. of Commrs. v. Key Trust Co. ofOhio, 145 Ohio App.3d 782, 2001-Ohio-2888, involving a railroad easement, the Sixth Appellate District found that even filing of a "notice of abandonment" with the Interstate Commerce Commission was not enough to demonstrate an intent to abandon an easement. The court stated, "[w]hile such a regulatory filing may constitute evidence of an intent to abandon for state property-law purposes, it is only evidence." Id. at 790. Rather, the court noted other evidence that indicated an intention to pursue future use of the property for other "railway purposes." Id.
 {¶ 29} The evidence presented in this case demonstrates merely passive nonuse and disrepair, not an intent to abandon by the previous landowners. Allowing trees and foliage to accumulate is not a decisive or unequivocal act. The evidence includes no indication that the predecessors in interest intended to abandon the easement or that Harvest Land affirmatively prevented use of the easement. Harvest Land planted grass over the alley that was created for the benefit of the easement; however, this did not extinguish the purpose of the easement nor prevent ingress and egress. Access to the easement over Harvest Land's property remains available. Having found no competent, credible evidence exists regarding intent to abandon, the trial court's decision is against *Page 12 
the manifest weight of the evidence.
 {¶ 30} Appellant's sole assignment of error is sustained.
 {¶ 31} Judgment reversed and remanded for further proceedings consistent with this opinion.
YOUNG and WALTERS, JJ., concur.
Walters, J., retired, of the Third Appellate District, sitting by assignment of the Chief Justice, pursuant to Section 6(C), Article IV of the Ohio Constitution.
[1] The city of Hamilton has resolved to vacate the alley based on the outcome of the case at bar.
[2] The easement in the instant matter was created by express grant. The express grant states that the easement exists to provide ingress and egress to the South "D" Street properties.
[3] The record demonstrates that the trial court conducted a de novo trial, noting that evidence presented during the summary judgment proceedings had no impact at trial.
[4] In the decision, the trial court found a contrast in testimony among the opposing witnesses regarding the extent of the overgrowth in the easement. During trial, the court scheduled a scene visit. Just days before the scene visit, appellant and two friends cleared brush from the easement, altering the condition of the easement. At trial, appellant also admitted renting a "Bobcat-type" utility loader to remove some of the overgrowth. In its decision, the trial court noted appellant's testimony that only saplings two to three inches in diameter were present in the easement and that she was able to "walk through a thicket to get to the dilapidated garage and that she could drive within ten feet of the garage." The court further considered the testimony of Thomas Hilsmier. Hilsmier testified that, while he owned the property, no trees were present within the easement, any brush in the easement could be "cut away with pruning clippers" and at one time he drove his vehicle onto the slab floor of the garage. The court also examined the testimony of the surveyor Todd Turner, who testified that "he needed a machete to clear a path back to the garage" and that trees were growing around the easement with a diameter of 15 to 20 inches. The trial court found that these various accounts created a conflict in testimony regarding the density of the overgrowth. *Page 1