[Cite as *PNC Bank, N.A. v. May*, 2012-Ohio-4291.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 98071**

---

## PNC BANK, N.A., SUCCESSOR IN INTEREST TO NATIONAL CITY BANK

PLAINTIFF-APPELLEE

vs.

## DENNIS C. MAY, ET AL.

DEFENDANTS-APPELLEES

## [Appeal by Christopher Pocos]

---

**JUDGMENT:**
REVERSED AND REMANDED

---

Civil Appeal from the
Cuyahoga County Common Pleas Court
Case No. CV-756099

**BEFORE:** S. Gallagher, J., Stewart, P.J., and Cooney, J.
**RELEASED AND JOURNALIZED:** September 20, 2012

**ATTORNEYS FOR APPELLANT**

Richard A. Kray
1468 West 9th Street
Suite 425
Cleveland, OH   44113

Richard C. Taricska
614 W. Superior Avenue
Suite 602
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEE**

**For PNC Bank, N.A.**

Robert B. Weltman
David S. Brown
Weltman, Weinberg & Reis Co.
323 West Lakeside Avenue
Suite 200
Cleveland, OH   44113

**Also listed:**

**For All-Trade Construction, Inc.**

All-Trade Construction, Inc.
1050 Lear Industrial Parkway
Avon, OH   44011

**For Dennis C. May**

Dennis C. May, pro se
6050 Wilson Mills Road
Cleveland, OH   44143

SEAN C. GALLAGHER, J.:

{¶1} Defendant-appellant Christopher Pocos appeals from the trial court's order granting summary judgment in favor of plaintiff-appellee PNC Bank, N.A., successor-in-interest to National City Bank ("PNC"), in this action to collect on an account. For the reasons stated herein, we reverse the trial court's grant of summary judgment in PNC's favor, and remand the matter for further proceedings.

{¶2} In late 2004, Pocos and codefendant Dennis C. May, on behalf of All-Trade Construction, Inc. ("All Trade"), applied for a small business line of credit with National City Bank. May signed the application as president of All Trade, and Pocos signed it as vice president. Next to each of their signatures in Section 4, May and Pocos checked the box stating "I intend to apply for joint business purpose credit with another person, a joint account or an account that I and another person will use." They then each signed on a line titled "Guarantor/Owner/Individual Signature."

{¶3} On May 25, 2011, PNC filed a complaint against All Trade, May, and Pocos because of an outstanding balance of $19,625.14, plus interest, on the line of credit. After Pocos filed an answer on August 9, 2011, PNC filed its motion for summary judgment on November 7, 2011. Pocos filed his brief in opposition to the motion on January 4, 2012. Without issuing an opinion, the trial court granted PNC's motion on February 4, 2012, and awarded judgment to PNC in the amount of $19,625.14, together with interest.[1]

---

[1] PNC sought and received default judgments against All Trade and May, on August 4,

{¶4} Pocos appeals and raises one assignment of error. He argues the trial court erred in granting the motion for summary judgment because the motion did not satisfy the requirements of Civ.R. 56. Pocos asserts specifically that he did not sign the small business credit application as a guarantor of All Trade, and National City Bank never formally approved the application or notified All Trade, May, and Pocos of the issuance of the line of credit. For the reasons that follow, we reverse the trial court's order.

{¶5} Appellate review of a trial court's decision on a motion for summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 1996-Ohio-336, 671 N.E.2d 241; *Zemcik v. LaPine Truck Sales & Equip.*, 124 Ohio App.3d 581, 706 N.E.2d 860 (8th Dist.1997). The court applies the following test:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor.

*Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 1998-Ohio-389, 696 N.E.2d 201.

{¶6} The party moving for summary judgment bears the initial burden of showing there is no genuine issue of material fact and it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107, 662 N.E.2d 264. If the

2011, and September 22, 2011, respectively.

moving party satisfies that burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."   Civ.R. 56(E).

{¶7} If a contract is clear and unambiguous, then its interpretation is a matter of law that we review de novo.  *Davis v. Loopco Indus., Inc.*, 66 Ohio St.3d 64, 66, 1993-Ohio-195, 609 N.E.2d 144.  If, however, the contract is ambiguous, ascertaining the parties' intent constitutes a question of fact that may require the consideration of parol evidence.  *Crane Hollow, Inc. v. Marathon Ashland Pipe Line, LLC*, 138 Ohio App.3d 57, 74, 740 N.E.2d 328 (4th Dist.2000).  It is well settled law that ambiguities in a contract "will be construed most strongly against the party who prepared it."  *Franck v. Ry. Express Agency, Inc*., 159 Ohio St. 343, 345-346, 112 N.E.2d 381 (1953).

{¶8} In support of his appeal, Pocos cites this court's decision in *Natl. City Bank v. Herak*, 8th Dist. No. 95540, 2011-Ohio-2286.  The defendants in *Herak* applied, on behalf of RPH and Associates, Inc. ("RPH"), for a small business line of credit of $10,000 with National City Bank.  Before executing loan documents, each of the defendants told a bank agent that they were not providing a personal guarantee on the loan.  The agent assured them that they could obtain a loan without a personal guarantee.  *Id*. at ¶ 4.

{¶9} When they executed the loan application, none of the defendants checked any box next to his or her signature, including the one that read, "I intend to apply as a

guarantor of the obligations of a business, including sole proprietors." The loan documents of RPH submitted into evidence by National City Bank, however, included a check mark in this box next to each of their names. *Id.*

{¶10} In one of its assignments of error, National City Bank argued its small business credit application is clear and unambiguous, and that by signing it, the defendants personally guaranteed the loan. The bank maintained it was irrelevant that the defendants did not check the box in question at the time of their signatures because the language in the box reinforced the plain language of the rest of the application. *Id.* at ¶ 10. The bank argued the trial court erred, therefore, in considering extrinsic evidence that National City Bank's agent told the defendants they would not be personally liable for the loan. *Id.*

{¶11} The defendants countered that the application was ambiguous because they did not check the box. This ambiguity allowed the trial court to consider extrinsic evidence about the contract negotiations to better understand the parties' intent. The evidence showed all three defendants agreed to the loan with an understanding they would not be personally liable in the event of RPH's default. National City Bank did not present any evidence outside the agreement itself, "which the [trial] court found to be ambiguous." *Herak*, 8th Dist. No. 95540, 2011-Ohio-2286, ¶ 11.

{¶12} Because the application was ambiguous, and National City Bank failed to offer any evidence to contradict the defendants' testimony, the trial court granted judgment in favor of the defendants. We affirmed the decision on appeal. *Id.* at ¶ 1.

**{¶13}** PNC argues that this case involves an entirely different fact pattern from that of *Herak*. The defendants in *Herak* denied checking any box in Section 4 of the application. PNC argues that the *alteration* in the application submitted into evidence by National City Bank created the "ambiguity" that supported the trial court's use of parol evidence.

**{¶14}** We do not agree with PNC's interpretation of *Herak*. National City Bank's *alteration* of the application did not create the ambiguity. The *unchecked box* created the ambiguity: "[d]efendants * * * argue that the contract is ambiguous in light of the evidence that the Section 4 box stating 'I intend to apply as a guarantor of the obligations of a business, including sole proprietors' was unchecked." *Herak*, 8th Dist. No. 95540, 2011-Ohio-2286, ¶ 11.

**{¶15}** Here, next to each of the signature lines in the credit application appear three boxes:

> ☐ I intend to apply for individual business purpose credit (individuals, including sole proprietors).
> ☐ I intend to apply for joint business purpose credit with another person, a joint account or an account that I and another person will use.
> ☐ I intend to apply as a co-guarantor of the obligations of a business, including sole proprietors.

**{¶16}** PNC essentially submits that Pocos was personally liable by filling out and signing the application regardless of which box he checked in Section 4. National City Bank took this position in *Herak*, and lost. *Id.* If it did not matter what box Pocos checked, there was no reason to include all three boxes in the application.

{¶17} PNC also tries to distinguish this case from *Herak* by highlighting that when National City Bank withdrew money from one defendant's personal account in that case, they deemed it a mistake and credited his account. This was merely an additional factor to consider in finding the defendants were not personal guarantors.

{¶18} As in *Herak*, Pocos's act of not checking the "guarantor" box in Section 4 created ambiguity in this case. In granting PNC's motion for summary judgment, the trial court erred in not considering a portion of Pocos's deposition testimony and statements in his answer. *Crane Hollow, Inc.*, 138 Ohio App.3d 57, 74, 740 N.E.2d 328.

{¶19} Deposition testimony included the following:

Q. As far as your defenses go in this case what is your belief as to why you're not liable on this line of credit?

A. Well, for one, I assumed that this was totally in the business's name. * * * But it was clear to [May] that I wasn't signing personally obligating nothing to this.

{¶20} In his answer filed pro se, Pocos also stated: "I never have and never would personally cosign on a loan for anyone, except possibly an immediate family member * * *. It was clear * * * when I signed the application that there was no personal financial obligation to the loan."

{¶21} PNC attempts to avoid our adherence to *Herak* in finding the application ambiguous because of the unchecked "guarantor" box. It argues regardless of whether Pocos checked the box, other portions of the application should have alerted Pocos that by signing the application as he did, he was personally guaranteeing the credit line

advanced to All Trade. Quite to the contrary, as discussed below, none of the language cited by PNC alters our conclusion.

{¶22} The introductory paragraph of the application provides, in part: "Persons providing information who are not applicants *or* guarantors should not sign this application." (Emphasis added.) PNC argues that if Pocos did not want to be a guarantor, he should not have signed the application after reading this sentence. It is, however, reasonable for Pocos to consider himself as an applicant only on behalf of his business. His signing the application did not, therefore, mean he considered himself both an applicant *and* a guarantor.

{¶23} Section 3 requires "company owners 20% or more and other guarantors" to fill in information about the business. PNC argues that by filling in the requested information in Section 3, Pocos confirmed he was a "guarantor." The simple act of providing company information in Section 3, without more, did not convert Pocos into a guarantor of All Trade's payment on the line of credit.

{¶24} Section 4 requests "company *and* guarantor signatures." (Emphasis added.) PNC argues that by signing the application, Pocos confirmed he was a guarantor. Pocos applied for a line of credit on behalf of his company and included his title, "VP." Once again, it was not unreasonable for him to believe he was providing a "company signature" and not a "guarantor signature."

{¶25} Pocos signed on a line titled, "Guarantor/Owner/Individual Signature." PNC argues that he signed as all three parties. Given the visual appearance of these

words, it was not unreasonable for Pocos to believe they meant guarantor *or* owner *or* individual signature.

{¶26} Finally, PNC points to the language of "We/I certify that we/I have read and agree with the applicable terms and conditions on the reverse side." It argues that by signing the application, Pocos agreed to the terms included in the "Personal Guarantors" section on the back of the application:

> For value received and intending to be legally bound, each of the owners named on the front ("Guarantor") jointly and severally guarantees the prompt payment of the indebtedness evidenced by and arising under this application and the Agreement when each payment becomes due, and approves all the provisions of this application and the Agreement. Guarantor's liability under this guarantee shall remain in effect until the indebtedness evidenced by the application and the Agreement is fully paid or until Bank gives Guarantor a written release.

{¶27} Pocos did not check, however, the only box on the front of the application as the "guarantor" of All Trade's obligations under the line of credit. It was not, therefore, unreasonable for Pocos to simply disregard this section because he did not believe he was a "personal guarantor."

{¶28} The application's ambiguity may be perceived as compelling the conclusion that Pocos was entitled to judgment in his favor as a matter of law even though he did not file a motion for summary judgment. Generally, "'Civ.R. 56 does not authorize trial courts to enter summary judgment in favor of a non-moving party.'" *Todd Dev. Co. v. Morgan*, 116 Ohio St.3d 461, 2008-Ohio-87, 880 N.E.2d 88, ¶ 15, quoting *Marshall v. Aaron*, 15 Ohio St.3d 48, 472 N.E.2d 335 (1984), syllabus. There is an exception to this general prohibition. *Id.* Courts should, however, rarely resort to it

because a grant of summary judgment in favor of a nonmoving party deviates from standard Civ.R. 56 procedure. *Byers v. Robinson*, 10th Dist. No. 08AP-204, 2008-Ohio-4833, ¶ 36. We defer to the standard procedure here.

{¶29} We conclude that the trial court erred in entering summary judgment in favor of PNC on its claim to collect on an account when, upon viewing the inferences to be drawn from the underlying facts set forth in Pocos's pleadings and deposition testimony in a light most favorable to him, PNC was not entitled to judgment in its favor as a matter of law. Accordingly, we sustain Pocos's assignment of error.

{¶30} We reverse the trial court's order granting summary judgment in favor of PNC. This matter is remanded to the trial court for further proceedings.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


SEAN C. GALLAGHER, JUDGE

MELODY J. STEWART, P.J., and
COLLEEN CONWAY COONEY, J., CONCUR