[Cite as *Sunshine Diversified Invests. III, L.L.C. v. Chuck*, 2012-Ohio-492.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 97101**

## SUNSHINE DIVERSIFIED INVESTMENTS III, LLC

PLAINTIFF-APPELLANT
and
CROSS-APPELLEE

vs.

## JORETHIA L. CHUCK, ET AL.

DEFENDANT-APPELLEE
and
CROSS-APPELLANT

**JUDGMENT:**
**AFFIRMED**

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-651232

**BEFORE:** Jones, P.J., Rocco, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:** February 9, 2012

**ATTORNEYS FOR APPELLANT**

Thomas L. Brunn, Jr.
Alison D. Ramsey
The Brunn Law Firm Co., L.P.A.
208 Hoyt Block Building
700 West St. Clair Avenue
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

**For Jorethia L. Chuck**

Rachel L. Steinlage
Debra J. Horn
Anne L. Meyers
Meyers, Roman, Friedberg & Lewis
28601 Chagrin Boulevard
Suite 500
Cleveland, Ohio 44122

Steven M. Ott
Justin M. Ritch
Latha M. Srinivasan
Ott & Associates Co., L.P.A.
55 Public Square
Suite 1400
Cleveland, Ohio 44113

**For M & L Leasing Co., et al.**

Don P. Brown
10 Center Street
Suite G
Chagrin Falls, Ohio 44022

LARRY A. JONES, P.J.:

{¶ 1} The issues in this appeal and cross-appeal result from the trial court's ruling granting summary judgment in favor of (1) defendant-appellee/cross-appellant Jorethia Chuck on plaintiff-appellant/cross-appellee Sunshine Diversified Investments III LLC's prescriptive easement claim and (2) Sunshine Diversified on Chuck's trespass claim. We affirm the trial court's judgment.

## I. Procedural History and Facts

{¶ 2} In April 2006, Sunshine Diversified purchased the property located at 2155 Superior Avenue ("2155"). Phoenix Coffee was one of the tenants in the building. In September 2007, Chuck purchased the property located at 2125 Superior Avenue ("2125"). At the time of the purchase, the building was vacant and Chuck had plans to use it for her psychology practice, a community cultural center, a community charter school for at-risk students, and to rent out portions of it. 2155 and 2125 are adjoining and contiguous properties; parking spaces are located along the westerly side of 2125. There is a sole driveway for ingress and egress to and from the spaces; the driveway is on 2125's property.

{¶ 3} Shortly after Chuck purchased the property, an attorney on her behalf sent a letter to Phoenix Coffee advising that its patrons who parked along the westerly side of the building were intruding on Chuck's property. The letter offered that the coffee shop's patrons could continue to use the property in exchange for the shop paying Chuck $600

per month.  The shop agreed to pay the fee and then deducted that amount from the monthly rent it paid to Sunshine Diversified.

**{¶ 4}**  Chuck then had dealings with Sunshine Diversified via its managing member, Thomas Unik.  Chuck advised Unik that even if the parties reached an agreement regarding compensation for use of the parking spaces, she would only allow such use Monday through Friday.  Sunshine Diversified did not agree to compensate Chuck for its tenants continued use of the parking spaces, claiming instead that it had a prescriptive easement.  Chuck then threatened to tow any vehicles parked in the spaces.

**{¶ 5}**  Sunshine Diversified brought this action in February 2008, seeking a declaration of its rights and a temporary restraining order.  The trial court granted a restraining order, thereby restraining Chuck from interfering with Sunshine Diversified's use of the disputed areas.

**{¶ 6}**  In Sunshine Diversified's complaint, it claimed rights of access to 2125's driveway and parking spaces via a prescriptive easement (Count 1), or an implied easement of necessity (Count 2).  Sunshine Diversified also asserted a cause of action for tortious interference with its business relationship with Phoenix Coffee (Count 3).[1]

**{¶ 7}**  Sunshine Diversified alleged that when it purchased its property in 2006, it was informed that, since 1983, the successive owners and tenants had parked their vehicles in the disputed parking spaces and had also maintained and improved the spaces.

---

[1]This count was added in June 2008, via an amended complaint, after Phoenix Coffee vacated the premise in April or May of 2008.

{¶ 8} Chuck answered, counterclaimed, and filed a third-party complaint. Relative to this appeal, Chuck denied Sunshine Diversified's claims of right to access, and counterclaimed that Sunshine Diversified trespassed on her property. Chuck also counterclaimed for tortious interference with her business relationship with Phoenix Coffee, contending that Sunshine Diversified interfered with her agreement with the shop whereby it paid her $600 a month for use of the parking spaces and ingress and egress to the lot.

{¶ 9} Sunshine Diversified sought a permanent injunction regarding the disputed property. After a hearing, the trial court denied Sunshine Development's request. Both parties filed motions for summary judgment. The trial court granted summary judgment in favor of (1) Chuck on Sunshine Diversified's prescriptive easement claim and (2) in favor of Sunshine Diversified on Chuck's trespass claim. This appeal and cross-appeal followed.

II. Law and Analysis

{¶ 10} Appellate review of summary judgment is de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). The Ohio Supreme Court stated the appropriate test in *Zivich v. Mentor Soccer Club*, 82 Ohio St.3d 367, 369-370, 696 N.E.2d 201 (1998), as follows:

> Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. *Horton v. Harwick Chem. Corp.* (1995), 73 Ohio St.3d 679, 653 N.E.2d

1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274.

{¶ 11} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); *Mootispaw v. Eckstein*, 76 Ohio St.3d 383, 385, 667 N.E.2d 1197 (1996). Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

A. Sunshine Diversified's Appeal: Prescriptive Easement

{¶ 12} Sunshine Diversified's sole assignment of error provides as follows: "The trial court committed prejudicial error in finding that no genuine issues of material fact remained as to whether Plaintiff-Appellant, Sunshine Diversified Investments III, LLC, has obtained a prescriptive easement over the parking spaces and shared driveway."

{¶ 13} In Chuck's motion for summary judgment, she contended that Sunshine Diversified was not entitled to a prescriptive easement to the driveway and parking spaces because it could not demonstrate the adversity requirement of an easement claim. Specifically, Chuck contended that Sunshine Diversified used her property with the "permission of Chuck's predecessor in interest and the use was consistent with the rights of Chuck and her predecessor in interest."[2]

---

[2]Chuck's summary judgment motion, p. 7.

{¶ 14} In opposition to Chuck's position, Sunshine Diversified contended that, because of continuous use by "tacking" the prior owners' use of the property, it enjoyed a rebuttable presumption of adversity. Sunshine Diversified set forth the following chronology. Since 1981, 2155 had been owned by Louis Roesch. Roesch first owned the property in his individual capacity and later through his business interests. Roesch is deceased, but Sunshine Diversified deposed his long-time counsel, Ann Hawkins, and relied on her testimony to oppose Chuck's summary judgment motion.

{¶ 15} According to attorney Hawkins, since Roesch purchased the property in 1981, he and the owners of 2125 shared the driveway to access their respective properties. Attorney Hawkins additionally testified that Roesch and his tenants openly used the disputed parking spaces without incident and without compensating the owners of 2125.

{¶ 16} Sunshine Diversified also relied on the deposition testimony of the third-party defendant Michael Morris in opposing Chuck's summary judgment motion. Morris was the previous owner of 2125 and the contact person with whom Chuck communicated her interest in purchasing 2125. Morris testified that he had originally purchased the property in September 1979 with his business partner, third-party defendant Lionel Meister. Morris actively managed the property until its sale in 2007 to Chuck.

{¶ 17} Morris testified that his building had been vacant since 2003, and described himself as an "absentee owner." He further testified that during the time of the vacancy, he could not control who parked in the lot, but stated that he considered the presence of cars on the lot as "security" against would-be vandals or burglars.

{¶ 18} According to Morris, in the 28-year period he owned 2125, he never granted permission for any encroachment by the owner of 2155 for the use of the driveway or the disputed parking spaces. But Morris testified that, although he never granted permission, the use of the driveway and parking spaces by the owners and tenants of 2155 was "obvious" to him. In regard to the use of the driveway, Sunshine Diversified also relied on Chuck's own testimony, that in her pre-purchase negotiations, Morris informed her that if she ever decided to obstruct 2155's use of the sole apron that "could create a problem."

{¶ 19} In its ruling, the trial court found that Sunshine Diversified did not set forth "sufficient facts or information to indicate that any possession was notorious, adverse, continuous or lasting for a period of at least 21 years * * *."

{¶ 20} "An 'easement' is a property interest in the land of another that allows the owner of the easement a limited use of the land in which the easement exists." *McCumbers v. Puckett*, 183 Ohio App.3d 762, 2009-Ohio-4465, 918 N.E.2d 1046, ¶ 14 (12th Dist.), citing *Colburn v. Maynard*, 111 Ohio App.3d 246, 253, 675 N.E.2d 1333 (4th Dist.1996). Easements may be created by (1) express grant, (2) implied grant, (3) prescription, or (4) estoppel. *McCumbers* at *id*.

{¶ 21} "To establish the right to a prescriptive easement, the moving party must demonstrate that she has used the property openly, notoriously, and adversely to the servient property owner's rights for a continuous period of 21 years." *Vaughn v. Johnston*, 12th Dist. No. CA2-4-06-009, 2005-Ohio-942, 2005 WL 516527, ¶ 11, citing *Pence v. Darst*, 62 Ohio App.3d 32, 37, 574 N.E.2d 548 (2d Dist.1989). Thus, to prove that one is

entitled to a prescriptive easement, one must prove that the use was (1) open, (2) notorious, (3) adverse to the property rights of the servient estate's owner, (4) continuous, and (5) for a period of at least 21 years. *McCumbers* at ¶ 15. Each of these elements must be proved by clear and convincing evidence. *Cadwallader v. Scovanner*, 178 Ohio App.3d 26, 2008-Ohio-4166, 896 N.E.2d 748, ¶ 55 (12th Dist.). "Clear and convincing evidence is that proof which establishes in the minds of the trier of fact a firm conviction as to the allegations sought to be proved." *Welch v. Marlow*, 5th Dist. No. 08 CA 8, 2009-Ohio-6145, 2009 WL 4021150,¶ 30, citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954). Once the claimant makes a prima facie case, the burden shifts to the landowner to prove that the use was permissive. *EAC Properties L.L.C. v. Hall*, 10th Dist. No. 08AP-251, 2008-Ohio-6224, 2008 WL 5064949, ¶ 7, citing *Goldberger v. Bexley Properties*, 5 Ohio St.3d 82, 84, 448 N.E.2d 1380 (1983); *Pavey v. Vance*, 56 Ohio St. 162, 46 N.E. 898 (1897).

**{¶ 22}** The trial court's decision that Sunshine Diversified did not have a prescriptive easement was based on its findings that: (1) Morris "encouraged" or allowed use of the parking spaces for at least a three-year period; (2) Sunshine Diversified's use was not adverse; and (3) Sunshine Diversified's use was not continuous for at least 21 years.

**{¶ 23}** The issue in Sunshine Diversified's appeal centers on whether Sunshine Diversified's use of the property was adverse. Use of property is considered to be adverse if it is without permission and inconsistent with the rights of the legal titleholder.

*Cadwallader* at ¶ 57, citing *Kimball v. Anderson*, 125 Ohio St. 241, 181 N.E. 17 (1932). If there is an express or implied recognition that a landowner can put an end to the use of the property by the person claiming a prescriptive easement, then the use is not considered adverse. *Cadwallader* at *id.*, citing *Manos v. Day Cleaners & Dyers, Inc.*, 91 Ohio App. 361, 363, 108 N.E.2d 347 (9th Dist.1952).

{¶ 24} Sunshine Diversified cites the Seventh Appellate District case of *Chappell & Zimmerman, Inc. v. Schiller*, 7th Dist. No. 01-CO-19, 2002-Ohio-1543, 2002 WL 924908, in support of its contention that its use of the property was not adverse. In *Chappell & Zimmerman*, the plaintiff and defendant owned adjacent real estate. The plaintiff owned its property since 1959 and operated a concrete business on it. The defendant purchased his property in 1987 and leased the land to a car business and had storage buildings on the property.

{¶ 25} A dirt and gravel road ran across the defendant's property and the plaintiff had used the road for ingress and egress since 1960. A dispute arose between the parties when the plaintiff began preparations to pave the road. After the dispute arose, the defendant would sometimes block the plaintiff's access to the road. The plaintiff filed an action against the defendant, claiming that it had a prescriptive easement. The matter was heard to the court; the court determined that the plaintiff had a prescriptive easement.

{¶ 26} The Seventh District affirmed the trial court, holding that "'a use does not necessarily become permissive simply because the property owner does nothing to prevent it out of indifference, laziness, acquiescence, or neighborly accommodation.'" *Id*. at ¶ 17,

quoting *Shell Oil Co. v. Deval Co.*, 1st Dist. Nos. C-980783 and C-980809, 1999 WL 741814 (Sept. 24, 1999). We find *Chappell & Zimmerman* distinguishable from this case. Specifically, the Seventh District relied on testimony that the plaintiff used the road without any agreement, oral or written, between the parties or their predecessors in interest, and maintained it as a "neighborly accommodation." *Id.* at ¶ 19, 21. On that testimony, the court held that defendant failed to demonstrate that the plaintiff ever had "permission" to use the road from the defendant's predecessor in interest. *Id.* at ¶ 23. But twice in its opinion, the Seventh District stated the following: "A use is not adverse when the use is by permission *or accommodation of the owner*." (Emphasis added.) *Id.* at ¶ 16, 29.

{¶ 27} The accommodation in *Chappell & Zimmerman* was not by the owner; instead, it was by the party claiming the easement, who "accommodated" the owner by maintaining the property. Here, however, the accommodation was by the owner.

{¶ 28} We agree with the trial court that Sunshine Diversified's use of the subject property was not adverse. In addition to finding *Chappell & Zimmerman* distinguishable from this case, we are not persuaded by Sunshine Diversified's contention that acquiescence does not equate to permission. Acquiesce is defined as "to assent tacitly; submit or comply silently or without protest; agree; consent." *Random House Webster's Unabridged Dictionary* 18 (1998). To acquiesce, therefore, means to agree or consent.

{¶ 29} The record here demonstrates that Morris knew Sunshine Diversified was using his property and he consented. In so finding, we are mindful that prescriptive

easements are not favored in law, because the legal titleholder forfeits rights to another without compensation. *McCumbers*, 183 Ohio App.3d 762, 2009-Ohio-4465, 918 N.E.2d 1046, at ¶ 15.

{¶ 30} We first consider attorney Hawkins's deposition testimony. That testimony does not establish that the predecessor owner's, Roesch, use of the property was without permission, as contended by Sunshine Diversified. As previously mentioned, her testimony was that since Roesch purchased 2155 in 1981, he and the owners of 2125 shared the driveway to access their respective properties. Hawkins further testified that Roesch and his tenants openly used the disputed parking spaces without incident and without compensating the owners of 2125.

{¶ 31} If anything, attorney Hawkins's testimony supports the conclusion that, although there was no formal agreement, Morris knew that Roesch and his tenants used the driveway and parking spaces and consented to that. Thus, attorney Hawkins's testimony did not establish that during the 26-year period 2155 was owned by her client, his use of 2125's property was done so adversely.

{¶ 32} We also consider Morris's testimony and find that it did not establish that Sunshine Diversified's use of the subject property was adverse. Morris testified that he knew that the coffee shop patrons used his property and that the "only time [his business] would run into a problem is if [patrons] would park in front of [his business's] two docks." Morris testified that if that happened, someone from his company would go into the coffee shop, ask if a patron was parked there, and if so, request the patron to move his or

her car.

**{¶ 33}** Morris further testified that when he was attempting to sell his building, he showed all his prospective buyers, including Chuck, a surveyor's map of the property and informed them that "there was no easement" for the property in dispute. When Chuck questioned him about cars in the disputed area, Morris told her that his building had been vacant for several years, he was an absentee owner, and he did not mind people parking there because it provided him "security." But Morris informed Chuck of the property line, and told her she could put up a fence. In September 2007, as part of the sale of the property to Chuck, Morris averred in an affidavit that there was no unrecorded easement or claim of easement.

**{¶ 34}** In March 2008, after Morris sold the property to Chuck, Morris averred in another affidavit that the parking spaces used by the owner, tenants, and patrons of 2155 caused an encroachment upon 2125's property. Morris further averred that he never granted permission for the encroachment. According to Morris, "I just let them do it. I never told them that we were going to put up a fence and stop letting them park in those ten spaces, whatever it was."

**{¶ 35}** Morris testified that he averred to the second affidavit after he was contacted by an attorney representing Sunshine Diversified. Morris also testified that "encroachment" was the attorney's term and that at the time he swore to the affidavit, he did not know the legal meaning of an easement.

**{¶ 36}** "Generally, a party's unsupported and self-serving assertions, offered by way

of affidavit, standing alone and without corroborating materials under Civ.R. 56, will not be sufficient to demonstrate material issues of fact. Otherwise, a party could avoid summary judgment under all circumstances solely by simply submitting such a self-serving affidavit containing nothing more than bare contradictions of the evidence offered by the moving party." *Bell v. Beightler*, 10th Dist. No. 02AP-569, 2003-Ohio-88, 2003 WL 116146, ¶ 33.

{¶ 37} Apparently the trial court viewed the second, March 2008, Morris affidavit as self-serving. We do not find that the court erred in doing so. The gist of Morris's testimony was that he was aware that Phoenix Coffee's customers parked on his property and, although he never expressly granted permission for them to do so, he acquiesced in it. The only time their use of his property was problematic for him was when cars blocked his docks and deliveries could not be made. When that happened, a representative from his business would go to the coffee shop, ask if anyone was parked there, and if so, request that the patron move his or her car; this is further evidence that Morris knew and allowed the shop's customers parking on his property.

{¶ 38} In fact, Chuck testified that during one of her meetings with Morris, prior to purchasing her property, Chuck asked him why the parking lot was so full. According to Chuck, Morris responded, "I let anybody park here because it makes it look like the building is occupied to cut down on vandalism, so people come and go. * * * [T]he coffee shop uses it." Chuck testified that Morris went further to state "but there's no easements. The parking lot belongs to this building."

{¶ 39} On this record, the trial court did not err in its findings and, therefore, properly granted summary judgment to Chuck on Sunshine Diversified's prescriptive easement claim. Sunshine Diversified's sole assignment of error is overruled.

B. Chuck's Cross-Appeal: Trespass

{¶ 40} Chuck's sole assignment of error in her cross-appeal reads: "The trial court erred in granting [Sunshine Diversified's] Motion for Partial Summary Judgment on the Issue of Trespass."

{¶ 41} Sunshine Diversified sought summary judgment on Chuck's trespass counterclaim. In that counterclaim, Chuck claimed that Sunshine Diversified and its tenants trespassed on her property by "driving over her driveway and parking lot, and by parking vehicles on her property." Chuck also alleged that Sunshine Diversified instructed its tenants to park on her property. She claimed that Sunshine Diversified engaged in intimidating acts toward her while trespassing on her property, and sought punitive damages.

{¶ 42} "'[Civil] trespass is the unlawful entry upon the property of another.'" *Jenkins v. Guy*, 4th Dist. No. 03CA34, 2004-Ohio-4254, 2004 WL 1802017, ¶ 23, quoting *Chance v. BP Chems, Inc.,* 77 Ohio St.3d 17, 24, 1996-Ohio-352 670 N.E.2d 985. Thus, the elements of trespass are "1) an unauthorized intentional act; and 2) entry upon land in the possession of another." *Brown v. Scioto Cty. Bd. of Commrs.*, 87 Ohio App.3d 704, 716, 622 N.E.2d 1153 (4th Dist.1993).

{¶ 43} In its ruling, the trial court found as follows:

Although [Chuck] maintains that the trespass was and is on-going, she has failed to offer any evidence of trespass or damages, only testifying that several instances of trespass occurred "when it was warm." As this Court's initial order mandated that while litigation was ongoing, the status quo was to be maintained, [Chuck's] bare allegations fail to outline when the alleged trespass occurred, and/or if these alleged actions occurred during the time period when the Court ordered that the status quo be maintained. It is also clear from the record that [Chuck] never notified [Sunshine Diversified] or [its] attorney of any alleged trespass.

{¶ 44} Both Sunshine Diversified and Chuck relied on Chuck's deposition testimony in support of and in opposition to, respectively, the summary judgment motion. Upon review of that testimony, we agree with the trial court's ruling. At deposition, Chuck testified, as previously mentioned, that Morris told her prior to her purchasing the building that, although the parking lot belonged to his building, he let anyone park there and, in particular, the patrons of the coffee shop parked there. When questioned about what specific evidence she had of Sunshine Diversified trespassing on her property, Chuck responded, "[w]ell, I have pictures of [Unik] personally driving around, speeding around, creating havoc himself." Chuck testified that this happened on "numerous occasions," but could not recall specific dates. She did testify, however, that it happened both while the restraining order was in effect and after it had been lifted. Chuck testified that she called the police on Unik three or four times. On one occasion when she called the police, they responded and determined that the video was not "really clear on how he tried to run over me with his car."

{¶ 45} Although Chuck testified that Unik drove recklessly around her parking lot both while the restraining order was in effect and after it had been lifted, she offered no

corroborating evidence. While it is true that the trial court must construe the evidence in favor of the non-moving party, this does not give a party "carte blanche to use self-serving statements, uncorroborated by any other evidence, to automatically defeat a well supported summary judgment motion." *Boyd v. Hariani*, 9th Dist. No. 22500, 2005-Ohio-4536, 2005 WL 2087824, ¶ 13.

{¶ 46} Chuck also testified as follows about being "accosted" by people associated with Unik: "Again, *they're on his property* parked in the back of the building. I go back. I can't even empty the trash alone. Some guy starts screaming at me and calling — swearing at me and calling me names, and I don't know these people." (Emphasis added.) Although Chuck characterized these people as being associated with Unik, she admitted that she did not know in what capacity they were associated with him. Further, by her own admission, they were on his property.

{¶ 47} Additionally, we agree with the trial court that Chuck failed to offer evidence that she suffered damages because of the alleged trespass. According to Chuck, she had several potential tenants for her building, but they all declined to sign leases because of the parking situation. In addition to not offering any corroborating evidence, Chuck's testimony was contradictory on this point. For example, she testified that she specifically told some of her potential tenants that they *would* have the requested number of dedicated parking spaces.

{¶ 48} Chuck also testified as follows about her unsuccessful attempts to get tenants in her building after the restraining order had been lifted: "Well, mainly because people,

they need a lot of renovations, and because I lost all the money there's no money to renovate if they need bigger space than what office space is already available in the building." Chuck testified that she had the money to renovate the building, but was forced to spend it all on attorney fees in this litigation. Those alleged damages do not correlate to the alleged trespass. As already stated, Chuck did not present sufficient evidence to overcome Sunshine Diversified's contention that it never trespassed upon her property.

{¶ 49} In light of the above, the trial court properly granted summary judgment in favor of Sunshine Diversified on Chuck's trespass claim.

C. Conclusion

{¶ 50} The trial court properly granted summary judgment in favor of (1) defendant Jorethia Chuck on plaintiff Sunshine Diversified Investments III LLC's prescriptive easement claim and (2) in favor of Sunshine Diversified on Chuck's trespass claim. Thus, the sole assignment of error presented by Sunshine Diversified in its appeal is overruled and the sole assignment of error presented by Chuck in her cross-appeal is overruled.

Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the

Rules of Appellate Procedure.


_____
LARRY A. JONES, PRESIDING JUDGE

KENNETH A. ROCCO, J., and
EILEEN A. GALLAGHER, J., CONCUR